The case before us today is 18-1186, Kim v. JP Morgan. Counsel, please. Good morning, Your Honors, and may it please the Court. My name is Mark Solomon. I'm here today on behalf of appellants and the debtors in the bankruptcy below, Alexander Kim and Laura Foster. Ms. Foster is with us here in court this morning. Banks like the appellee must be required to follow the rules to prove they have a legal right to foreclose a promissory note, but that isn't what's happened here. This case provides a stark illustration of the reckless misuse of financial documents, utter disregard for rules and legal process that's infected the home lending industry, and that played an instrumental role in bringing about the great economic crisis. Banks like the appellee use their power and their bottomless resources to manipulate the system, grind down homeowners like Mr. Kim and Ms. Foster over years of expensive litigation, and eventually find ways to take away people's homes without proving that they have the right to do it. Public policy demands that a proper application of negotiable paper law is one way to protect homeowners like the appellants here. This Court has the power to do that by reversing the 2016 bankruptcy court order and granting debtors' claim objection. A critical fact in this case is that after Mr. Kim signed a $2 million promissory note payable to Washington Mutual Bank in February of 2008, WAMU, that's Washington Mutual, proceeded to blank endorse that note. A blank endorse note makes the note bearer paper, meaning anyone with physical possession of the original note is the legal holder with the legal right to enforce it. This Court's 2012 decision in Miller makes clear that physical possession of the blank endorse note is essential to prove ownership and assure that only one person is the holder with the legal right to enforce. Colorado law, which is applicable in this case in the bankruptcy, and is cited in the LaHunta case in specific, which is cited in our brief, says that a blank endorse note is negotiated, which is a transfer, simply by delivering physical possession of the note to another person without any regard to the intention of the parties in the delivery. By turning the note into bear paper, WAMU continued its normal business of bundling and then transferring bear notes to investors as underlying assets in mortgage-backed securities while keeping the right to service the loans for itself. But in September of 2008, WAMU failed. The FDIC became its receiver. They obtained all of WAMU's assets by operation of law. On the same day, the FDIC, through a purchase and assumption agreement, sold all the assets that WAMU had to Chase Bank. Chase first started communicating with the debtors in October of 2008, advising them that WAMU had been the servicer, that they were now the servicer, not the holder. Can I just fast forward a little bit here to focus on one of the issues in question as it relates to admissibility of certain exhibits? And what I want to get clear is the scope of the challenge. In your reply brief, it seemed to focus on exhibits L and M in particular. Are those the ones that, in particular, you were addressing as being the basis for an improper admission and use by the bankruptcy court? Your Honor, that is certainly a key prong of our appeal. Exhibits L and M are sort of the crux exhibits that the bankruptcy court relied on or that Chase's witness, Ms. Leah, relied on in her testimony. She was a debtor's witness too, wasn't she? She wasn't really. It's important to understand that when the bankruptcy court held its hearing in June of 2016, it was dealing with two separate motions. It was dealing with the debtor's motion for sanctions, which Judge Brooks had earlier invited them to file based on the lack of disclosure by Chase. And the court was also dealing with the claim objection. So in the first motion, the motion for sanctions, the debtors bore the burden of proving sanctionable conduct. Well, in terms of the order of proof, the debtor had the right to order their proof any way they wanted, right? They did, and so they did. And so in reading Ms. Leah's testimony, for a large part of Ms. Leah's testimony, is the debtor eliciting information from her, right? To some extent it is. That testimony was focused on really what documents had been provided, how they had complied with a bankruptcy rule 2004 subpoena. Well, that testimony also seemed to address some of the issues related to whether, in fact, Chase possessed the note, whether, in fact, Chase delivered the note to their agent. Those issues that are relevant to the lost note statute also came up in her testimony, did they not? Well, Ms. Leah certainly responded to questions about what had been produced by offering her position that the documents that she had produced demonstrated that Chase had the original note in 2009 and transferred it to their lawyer in 2010. Well, you didn't stop her from making that testimony, did you? She wasn't stopped. But again, I believe, Your Honor, the basis of that is that the debtors were having to carry a burden on the sanction side, and so we're questioning her about that. And then subsequently the court sort of combined all of the testimony into one as opposed to segregating it out. Well, that wasn't the court's responsibility to order the proof on the sanctions issue, was it? It was your responsibility. So you called her, right? The debtors did call Ms. Leah. Okay, well, you called her to testify. She offered testimony about Chase's possession of the note, when Chase possessed the note, when Chase transferred the note to the attorney, and the fact that the note didn't come back. She said all those things in her testimony, didn't she? She did, and ultimately that's challenged on the fact that she also said that she had no personal knowledge at all about any of that. Well, you didn't challenge it at the time, did you? It was challenged during the hearing, Your Honor. In our reply brief, we lay out with some annotation to the appendix specifically where the objections were raised. But debtors did object at the hearing to Ms. Leah's testimony on the basis that she didn't have any personal knowledge, that she admitted she didn't have any personal knowledge. And the lack of personal knowledge being important for what, for the business record rule? Well, it's important in this case for two reasons. One, it's important for her admission of the exhibits, but it's also important because, as Chase points out, they say even without those exhibits, her testimony still carries the day. But, of course, her testimony is based only on reading and really parroting back to the court the contents of two exhibits, Exhibit L and Exhibit M. That's what happens with business records, right? It's just a custodian, a person with some experience, and you know the elements as well as I do. What is the problem with Exhibit L coming in under that rule? Well, it was objected to on a number of bases. It was objected that it's hearsay within hearsay, that she didn't have any idea who actually created the document, that it wasn't created. There was evidence from Mr. Burns that the document wasn't created contemporaneously, but was created as a litigation tool, and something created for litigation isn't created in the ordinary course of business and isn't a business record. And so there were a number of objections raised both to Exhibit L and Exhibit M on those type of grounds. Her parent in connection with litigation, was that an allegation raised as it relates to Exhibit L? Exhibit L was just this document that was scanned in at the time they had the original note, which they would have done in the ordinary course of business, would they not? Well, but there was evidence in the case that the document was actually created in 2015. That was Mr. Burns' testimony, that these documents were created in 2014 and 2015 for purposes of this litigation. As in a computer printout of what was already in the database as being inputted information? Well, the only information that had been made available to the debtors suggested that these documents were created. I mean... You dispute that Chase scanned in the original note at the time that they received it? That's an absolute fundamental thing that we dispute, because, Your Honor, we don't believe that Chase ever had this original note. Nobody ever saw the original note. The only piece of information that suggests there was an original note is Ms. Leia's testimony looking at this document that at least our forensic document expert said was created in 2015. And what's Exhibit A? I mean, Exhibit A is a copy of the original note. It's a photocopy of the note, and clearly, nobody disputes that Chase has photocopies of the note. Chase was the servicer of the note. When WAMU blank endorsed the note, they probably transferred it off in a bundled package, the original. The original is the reified right to be paid. It's the key. The photocopy, there can be many photocopies. In fact, in 2016, when Chase filed another foreclosure, they attached a photocopy that didn't have the blank endorsement on it. So I don't dispute that they have many photocopies of the note, and that Exhibit A may well be a copy of a photocopy of a note that has a stamp of a date on it. So you're saying that even if Exhibit L and M come in, you should still win because there wasn't adequate proof that what was scanned was the original note. Is that right? Well, that's absolutely part of our argument. I mean, we should also win as a matter of law because the court misapplied Section 43309, Colorado's lost note statute. No, I understand that, and we'll get there. But back to what Judge Holmes was asking you as far as Exhibit L, and you're saying maybe the document was created in 2015 or another time. The scan date at the top of this is 9-17-09. And the court, the bankruptcy court, specifically said in admitting that, while it called it a business record, it also said it's not coming in for any purpose other than to show that it's a document that came out of Chase's file. And again, remember, Chase had the burden of proving to – well, it didn't have the burden of proving. It had a defense that it had produced documents. That was a defense to the sanctions claim. So it certainly came in on that basis, but not for the truth of the matter asserted. And why does that matter? I mean, we can affirm on any grounds supported by the record if Exhibit L in fact is a business record because the court's limitation struck me as odd because, in fact, the court didn't seem to follow its own limitation when it issued its order, which you have alleged is a basis for some concern. And so the court purported to limit it to just what's in Chase's file, but it didn't hold to that. And if it didn't hold to that and we find Exhibit L is a business record, what difference does it make? Well, I mean, obviously, if you find that what the court did is all correct, then I'm not sure I can answer what difference it makes. Except there are legal reasons why the bankruptcy court order should still be reversed as a matter of law. And if I can have just a minute to give you that because I'm almost out of time now, but if I can give you a minute to jump to that, Chase acknowledges this is the basis of Chase's defense here, or Chase's, I'm sorry, not their defense, their lost note claim, is that they had the note and that they gave the note to their lawyer. And that, because the note is blank endorsed, and the key case to look at here is the LaHunta Bank case cited in our brief, what that case tells you is that if you have a blank endorsed note and you even give it to your lawyer, in that case it was a blank endorsed cashier's check, but it's a negotiable piece of paper. If you even give it to your lawyer, the intention of why you give it to them makes no difference. That is a transfer. And a transfer makes the person who receives it the holder with the full rights to enforce. And under Colorado's lost note statute, one of the things that Chase has to prove is that the loss was not the result of a transfer. Now, Chase suggests that that means a transfer of ownership, but it doesn't say that in the statute, and it doesn't say it in LaHunta. It doesn't say it in the LaHunta case. Doesn't the official commentary to 4-3201 speak of the notion of a person is not automatically divested of his or her status as a holder when his or her agent possesses the instrument? And this lawyer would be the agent, would he not? The difference and the key distinction is that this note is a blank endorsed note. And a blank endorsed note is a blank check. And what the LaHunta case says is that if you give that blank check to your lawyer, regardless of your intent, even if your intent is for them to safe keep it for you. But in that case, there was a question what the intent was. Perhaps the money belonged to the lawyer now, but not in this case. I believe in that case that the court said the intent is immaterial. It said there was no real evidence offered on the intent, but that the intent is immaterial. The simple transfer of a blank endorsed note, even to your lawyer, makes the lawyer the holder. And that right there would be fatal to the Rule 309 position. Your Honor, I've got 10 seconds left. I'd like to keep it for rebuttal, maybe say one thing at the end. Please. Thank you, Your Honor. Good morning, Your Honors. Mike Hoffman for the Appellate League, J.P. Morgan Chase. The Bankruptcy Court found as a fact that Chase proved its case under Colorado's Lost Note Statute 43309. After a trial, the Bankruptcy Court made four key factual findings that bring Chase within the Lost Note Statute. Let me ask you about one of them, which is the Bankruptcy Court says here, it shows the original note was scanned into its record-keeping system on September 17, 2009. What is the evidence behind that word original? I understand that you have established through Exhibit L, assuming it's properly admitted, that at least a copy was scanned. But what is the evidence of original? I haven't seen that. Ms. Lee testified on page, Volume 7, page 1835 of the appendix, that Chase would not have a scan of the original note if it had never received the original note. So she directly addressed that issue in her testimony without objection from the debtors. You're saying that her testimony was we would never scan a copy? Exactly. That's what she testified to at 1835 of the appendix. And so I think that brings me to the issue which Your Honor raised about Ms. Lee's testimony, which is a lot of the testimony came in on examination from the debtors. A lot of the rest of it, all the rest of it, came in on examination from Chase. But there was no personal knowledge objection ever made during her testimony. During the, as it relates to her testimony prior to, let's segregate out the admission of L and M. Prior to the admission of L and M, would it be your position that her testimony at least supported the first two elements of the lost note statute, if not the entire statute itself? I think it supported at least the first three, maybe all four. That is our position. She testified on examination from the debtors' council that Chase knows it acquired all of WAMU's mortgage assets. That's page 1798 of the appendix. She testified that Chase was in possession of the original note. That is page 1792. She testified that Chase sent the note to its original foreclosure counsel, Robert Hoppen Associates. That's appendix 1788. That establishes, I think, everything under the lost note statute, probably including the right to enforce the instrument. So that would be the fourth one that you say may not have been established by her testimony? Yeah, I think that's the only one that, I'm sorry. And what in the record would establish that fourth one? That we had possession of the note. This is why I think this may be proved by her testimony that we had possession of it. As debtors' counsel has pointed out, usually the right to enforce a note follows physical possession of it. And so when Lee testifies that Chase had physical possession of the original note before it was sent to Mr. Hopp, that supports the bankruptcy court's finding that we had the right to possess the note. I'm sorry, the right to enforce the note when we lost possession of it. Got it. But isn't that the one that you said might have been? I'm trying to get clear. You're saying the first three, what is the one that she may not have established by her testimony? The one that maybe she didn't establish, although I think it's a fair inference, would be the right to enforce the note. And that would be turn on the possession, right? That turns on the possession. And that would be the question related to what Judge Phillips asked, as to whether, in fact, there was evidence in the record that Chase had the actual note. Yes. And so there were relying on her testimony again, aren't we, in terms of the notion that it was the business practice of Chase to only scan in originals? Yes, Your Honor. I was drawing a distinction between questions that the debtors asked her and what we asked her. Okay. We asked her, how do you know you have the original? And she said, we don't scan unless we have the original. Oh, okay. I got it. I apologize. Okay. Let me ask, well, why don't you talk about LaHunta Bank, and since that was one of debtors' key cases during oral argument, why doesn't that, in fact, establish that if the note was transferred as a blank note to the lawyer, whatever his name was, that that would transfer possession? Sure. Well, in LaHunta Bank, there was a factual dispute about why the client, who, by the way, was dead at the time this was all happening, gave the note to the lawyer. You can tell from the Supreme Court's opinion that the position taken by the lawyer was, that was payment to me for my legal services. The position taken by the client's, the dead client's children was, no, it wasn't. My mom gave that to you for safekeeping. So that was a question of the purpose the client had in transferring the note. And the Supreme Court said there, kind of unbelievably, given some of the history, but the Supreme Court said, look, the evidence didn't pan out, didn't support the client's children's position. Pardon me. We believe the lawyer had that note as payment and was entitled to enforce it. That's not the situation here. In this case, nobody. So the court, and I read LaHunta Bank, but I haven't read it right yesterday or anything. So in that decision, are you saying that the court took the position, made a determination essentially on this dispute issue, that the lawyer had it for purposes of his services, and therefore that would, of course, create a distinction between that and at least what is purported to be at play here? Exactly. What the Supreme Court said, and this is a paraphrase, the Supreme Court said the trial court found the evidence didn't bear out the children's position. Okay. And I think the children's position is clear, was that my mom gave you that note for safekeeping. In this case, no one, not the client, not the lawyer, says that Chase gave Hoppe a $2 million note to pay him. Everybody agreed the purpose of giving him the note was so he could go file a foreclosure action in the name of Chase. And the statute is quite clear, the statute that defines transfer, that an instrument is only transferred if it's delivered by one person to another, quote, for the purpose of giving to the person receiving delivery the right to enforce the instrument, close quote. That's not what Chase did. That's not why Chase gave the note to its agent. Do you contend that Chase still possessed the note after it had given the note to Attorney Hoppe? Physical, constructive physical possession, I think the answer to that is yes. All right. But I think is there a, what's your legal basis for saying that? Because it has to be lost when it's in possession of the holder, right? No, no. It doesn't have to be lost when it's in possession of the holder. The holder has to have the right to enforce the note at the time it loses possession. So if the note is given to an agent. Well, let me just read you. The statute, what I'm talking about, 43309A and then 1, a person not in possession of an instrument is entitled to enforce the instrument if, one, the person was in possession of the instrument entitled to enforce it when loss of possession occurred. Well, so I think the answer in this case would be Chase was in possession of the note. I don't think that transferring it to an agent means Chase lost possession. I think when Chase lost possession is when the agent lost track of it. Okay. And that's what I'm trying to nail down is if that's so, that's one thing. If it's not so, then it's something else, which is to say, if we disagree with you after we study this further that, in fact, Chase continued to possess, then where are you? Do you lose? No, I think I still lost the note when I sent it to the lawyer. If that's a loss of possession, I think the evidence is we didn't know where it was after that. You think loss of possession includes transferring it to your lawyer? I think if you're applying the lost note statute, I think the question that's being answered is should this person have a right to enforce the note? I think the issue is if you've given it to your lawyer for purposes of a lawyer pursuing a case on your behalf, I don't think you should be worse off than you would be, say, if the note were stolen. If somebody stole the note from Chase, we would have a right to enforce it. I think if we send it to our lawyer for the purpose of filing a foreclosure action and the lawyer loses track of it, I think we have to be entitled to recover under the lost note statute. Because at that time, is it true then that you would have both had possession as a legal matter, not obviously physical possession? You would have had possession, constructive possession, and also a right to enforce. Is that the position? Because the lawyer is your agent, and therefore, yes, he was acting to enforce on your behalf, but he was not distinct from you. Right. That's exactly right. I don't think we've, you know, we haven't lost our right to enforce the note by giving it to the lawyer to have him enforce the note on our behalf. Regarding the testimony of Ms. Lee, the debtor had to call Ms. Lee, correct? Yes. And you're saying that at the time the testimony was elicited, there was no motion to strike? Exactly. But I understand from opposing counsel's argument that as the hearing proceeded toward the end, that there was a suggestion that her testimony was inadmissible. And, you know, they may not have said a motion to strike, but that they challenged it. My review of the record indicates they did not challenge any of her direct testimony. What they challenged were her qualifications under 803-6D to authenticate and get the business records in, because they had a theory that she needed personal knowledge. She had to have seen the note being scanned in. That was the theory. The Bankers Corp. proper objection. So you are conceding then that at least for purposes of challenging the foundation of that as a business record is they did preserve that objection? I think that all they preserved an objection to is whether Ms. Lee was, within the words of 803-6D, another qualified witness. And the Bankers Corp. found that she was. And I think that finding is unassailable. She testified that she personally observed Chase's record-keeping process, personally observed how Chase scans and documents, knows that they're kept and maintained in the ordinary course of business, that the records are made contemporaneously, and that Chase relies on entries in the file in conducting its business. And from that, you infer that they followed that same procedure in this particular case? I think that's how the business record exception to the hearsay rule works. Yeah, I think that's right. I think if you had to have a corporate person with personal knowledge, corporations couldn't litigate in federal court. You'd have to find the person who signed the contract 20 years ago. In this case, the person who actually scanned in one of about 2 million notes during a given year. It's unworkable. What the rule allows is for a business to say, here's how our business operates, here's someone who knows how we operate, and here's someone who knows that we rely on these records we create. And if that foundation is laid, as the bankruptcy judge found it was here, then the records come in. And that's what happened. What there was never a challenge to was her, under Rule 602, there was never a contemporaneous challenge to her direct testimony. They didn't challenge that. So the 602 issue they're raising now, they didn't make a Rule 103a objection at trial, as the Federal Rule of Evidence requires. Even if her testimony was based upon the records? Even if her testimony was based upon the records. It doesn't matter. The 1972 Advisory Committee note to Rule 602 makes this clear. They say this rule doesn't apply if you have a person testifying based upon business records. It just doesn't apply. This is so corporations can litigate in federal court. Well, testifying based upon business records, but the implication of that would be that the records are in, and the records were acceptable. I understood your position to be, and correct me if I'm wrong, that quite apart from the admission of Exhibit L and M, you had testimony from her that was unobjected to. So whether that was wrong or right, nobody objected to it, and so that testimony can form the basis for your lost note statute. You're exactly right. We've all tried cases. You object as it's happening. You don't go over the transcript later and say, I don't know if the witness knew this, or I should have objected at that time. This evidence came in, a lot of it from them. It's evidence the bankruptcy court could have relied on. He did rely on it. It's perfectly appropriate. Okay, fast forward then to Exhibit M. I'm troubled by Exhibit M. Going through Ms. Lee's testimony, Ms. Lee did not, she didn't ever look at the documents that supported the basis. Exhibit M is like a computer printout. It's almost like an Excel spreadsheet. She had never looked at the documents that supported it. She didn't compare those documents to Exhibit M to confirm that that's accurate. So it's not an original, right? No, Exhibit M is not an original. Okay, well, it's not an original. It's not a summary exhibit based upon the admission of voluminous records under 1006. It's not that, right? It's not that, but it is a business record. How can it be a business record if you don't have, she has not talked about the fact that the preparers of Exhibit M could satisfy the requirements of the business records rule, nor had the underlying documents satisfied the business records rule, since she never looked at them. Well, I think she can. I mean, if she knows, first of all, that the bank's record did not rely on Exhibit M. It's not mentioned in his opinion. Only Exhibit L is mentioned. Second, if she testifies, as I believe she did, that she knows how documents like Exhibit M are created by Chase's system and that it's generally reliable, there's not a requirement that the business record witness go back and examine the underlying document. No, I don't recall her testimony. The testimony that you, the business record factors that you clicked off, it seemed to me were congruent with Exhibit L. I didn't see them as being congruent with Exhibit M. In fact, she didn't even know what some of the entries on Exhibit M were for, right? She didn't know what some of them meant. That's true. Well, then she didn't know anything about the document. But she was asked at the beginning of her testimony about her familiarity. Well, I wouldn't say that's a fair characterization. She knew what it reflected. There were several entries on there that she said she didn't know what they were. Sure, sure. I mean, if you showed me a printout from my law firm, I probably couldn't tell you every single thing on there. She knew the significant ones. And she testified at the beginning of her testimony about her general familiarity with how Chase keeps business records. I think that is what's needed. And also, this is reviewed, of course, for an abuse of discretion in a bench trial. We don't have a jury trial here where there's some risk a jury may be misled. You have an experienced judge admitting this is a business record and giving it the weight that he thought was appropriate, which, judging from his opinion, really wasn't any. He doesn't mention it. So I don't think, even if there was some error in the foundation of that, the mission of that exhibit, I think it's got to be harmless on appeal, especially given all the testimony that Ms. Lee gave about what actually happened to this note and the fact, I think you heard today, it's undisputed this note went to Hopp. It's undisputed. And the debtors admitted this. I'm up. I'm sorry. Thank you, Your Honor. Thank you very much. If you would give him 50 seconds. You don't have to take it, but you have it. Well, I appreciate that. Thank you, Your Honor. Two points I'd like to make. One, Chase's attorney just noted that there's nothing in the record that says the court relied on exhibit M, and I just want to be sure that we address that. To support its finding of how the note was lost, the court uses the date May 12, 2010. It does that in footnote 23. The only evidence in the entire case that provides that date is exhibit M, and Ms. Leah reading what exhibit M says. And so that's the huge point of how the note was lost, and it's established purely and only by exhibit M, nothing else. The second thing I'd like to address is LaHunta. Go ahead and do it. And I'd like to refer you to footnote 4. And in footnote 4 of that case, the court sort of notes that why the cashier's check with the blank endorsement ended up in the lawyer's hand doesn't factor into our analysis. Quote, once the lawyer obtained possession of the check, he was the holder of bearer paper, and whether or not the owner thereof, he had the right to transfer or negotiate it. The difference in what Chase is talking about is that this is a blank endorsed note. And once blank endorsed, merely giving it, it's not the same as a thief. It requires delivery. Delivery is a voluntary transfer, but the intent's unimportant. Negotiation is the voluntary delivery of a blank endorsed instrument. That's negotiation which is transfer. And that's the law in the case. Thank you very much, Your Honors. Thank you, Counsel, for the helpful arguments. The case is submitted.